# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Terracon Consultants, Inc., ) | Civil Action No. 2:19-cv-396-BHH |
| Plaintiff, ) | |
| v. ) | |
| ) | **VERIFIED COMPLAINT** |
| Insight Group, LLC, Ryan Keiper, and ) William Christopher, Jr., ) | *Jury Trial Requested* |
| Defendants. ) | |

Plaintiff Terracon Consultants, Inc. ("Terracon") complaining of the Defendants, Insight Group, LLC ("Insight"), Ryan Keiper ("Keiper"), and William "Reg" Christopher, Jr. ("Christopher"), alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Terracon is a corporation organized and existing under the laws of Delaware with its principal place of business in Olathe, Kansas.

2. Upon information and belief, Insight is a single-member limited liability company organized and existing under the laws of South Carolina, with its principal place of business in Charleston County, South Carolina. Upon information and belief, Christopher is the lone member of Insight.

3. Upon information and belief, Christopher is a resident of Charleston County, South Carolina.

4. Upon information and belief, Keiper is a resident of Charleston County, South Carolina.

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, as there is complete diversity between Terracon and Defendants and the amount at issue exceeds $75,000.

6.      Venue is proper in this Court because the misappropriation complained of herein has occurred and shall continue to occur in Charleston County, South Carolina.

## FACTUAL BACKGROUND

**A.    Terracon's Business and Proprietary and Confidential Information**

7.      Terracon is a 100 percent employee-owned consulting engineering firm with more than 4,500 employees in over 140 offices. It provides services in multiple engineering fields, including environmental, facilities, geotechnical, and materials engineering.

8.      Terracon has invested substantial time, money, and effort to develop proprietary technology software and processes that enable the company to deliver its engineering services with unique capability, and these processes are a key advantage in this highly competitive market for consulting engineering services. Through use of its proprietary technology and processes, Terracon is able to generate proprietary reports and achieve efficiencies and results for customers, resulting in a competitive advantage. Terracon's internal processes, as well as its other confidential strategic and business information, are not generally known in the industry, adding to the value of Terracon as an enterprise and to its competitive advantage in the marketplace. This strategic and business information includes, among other things, customized configuration of computer software systems and databases. Among other things, Terracon has specifically customized its gINT software to include proprietary methods of data storage, automation, proprietary test calculations, and proprietary methods of data plotting and

presentation. Terracon's customized gINT software is a Terracon trade secret and is not generally known in the engineering industry.

9. Terracon has developed its customized gINT software over the course of at least ten years, at a significant labor and financial cost.

10. Terracon protects its trade secrets by maintaining the confidentiality of this information. To maintain the secrecy of its confidential information, Terracon takes the following steps: (a) limiting access to electronic information through a secure server that requires employee login credential for access; (b) limiting access to information within the employee population on a tiered need-to-know basis; (c) only accessing Terracon's customized gINT software on Terracon computers; and (d) subjecting employees to policies in the Human Resources E-Manual (the "E-Manual") and its Business Conduct and Ethics Policy (the "Policy") that specifically cover the use and protection of company assets, including trade secrets, confidential and proprietary information, and electronic data (see Ex. A, attached).

11. Specifically, the E-Manual provides that "[e]xcept as necessary to conduct business, all confidential information of Terracon must not be discussed or posted. Confidential information includes . . . project and client information . . . , business and financial information of Terracon, engineering ideas and designs, databases, configuration of computer systems, customer lists, pricing strategies, marketing plans and materials, personnel data, personally identifiable information of other employees, clients or other individuals, and other similar information to that listed. When an employee leaves Terracon, all Terracon confidential information must be returned immediately to Terracon." (Ex. A, at 6.)

12. The E-Manual further provides that "[w]ithout proper authorization, Users may not do any of the following: (1) install software on any of Terracon's computers; (2) copy

software for use on their home computers; (3) provide copies of software to any independent contractors or clients of Terracon or to any third person; (4) download any software from the Internet or other online service to any of Terracon's computers; (5) modify, revise, transform, recast, or adapt any software; or (6) reverse-engineer, disassemble, or decompile any software." (Ex. A, at 66.)

13. Terracon's Policy further states that "[e]ach employee has the duty to protect sensitive and confidential information, including personal employee data. Confidential information may include business information, financial information, engineering ideas and designs, project – related reports and formats, databases, configuration of our computer systems, customer lists, pricing strategies, marketing plans and materials, personnel data, personally identifiable information pertaining to our employees (e.g., salary or performance-appraisal data), clients or other individuals, and similar types of information provided to Terracon by clients, suppliers, partners and employees. All confidential information of Terracon belongs to Terracon and must be maintained as confidential. Except as necessary to conduct our business, posting or discussion of any Terracon confidential information concerning our business, employees, information or prospects is prohibited. If an employee leaves Terracon, all records containing any Terracon confidential information in an employee's possession must be immediately returned to Terracon." (Ex. A, at 34–35.)

14. Terracon is dedicated to protecting its confidential information because this information derives its value from not being generally known in the industry, readily ascertainable, or susceptible to reverse engineering.

**B.    Defendant William Christopher's Employment with Terracon**

4

15. Christopher began his employment with Terracon in 2009, when his company WPC, Inc. was acquired by Terracon. He was later promoted to Senior Vice President and Division Manager for Terracon's South East Division.

16. In his capacity as a Senior Vice President and Division Manager of the South East Division, Christopher was responsible for directing Terracon's operations on the East Coast from Washington, D.C. to Savannah, Georgia.

17. Christopher was aware of a substantial portion of Terracon's confidential information. In addition, Christopher was a member of Terracon's Strategic Planning Steering Committee during the final year of his tenure at Terracon. That committee was tasked with developing Terracon's strategic plan for the years 2019–2023.

18. As an employee of Terracon and in the course of performing his duties for Terracon, Christopher (a) had responsibility for and received training in the existence, use, and application of Terracon's services and software; (b) received confidential information with respect to Terracon's clients and the provision of Terracon's services to such clients; and (c) had repeated regular and direct contact, and developed business relationships, with Terracon's clients.

C.  **Christopher's Departure from Terracon to Work for Defendant Insight**

19. While still employed in his high-level position at Terracon, Christopher began devising a plan to leave Terracon to create his own competing business.

20. In late July 2018, Christopher put his plan into motion. He gave notice of his "retirement" from Terracon on July 30, 2018, but made no indication of his intention to compete with Terracon. At that time, Christopher asked to stay on with Terracon until the end of August 2018. Terracon agreed, and Christopher's last day with the Company was August

5

31, 2018. During this time, Christopher continued to attend Terracon's Strategic Planning Steering Committee meetings.

21. Terracon later discovered that Christopher incorporated Insight on August 7, 2018, which was the day before the last meeting of Terracon's Strategic Planning Steering Committee began.

22. After Christopher opened Insight, a number of Terracon employees left Terracon to join Insight over the next several months. As of the date of this filing, Christopher has successfully lured approximately 14 Terracon employees to Insight, including Defendant Ryan Keiper. Upon information and belief, Christopher offered employment at Insight to these employees while still working for Terracon.

**D.     Ryan Keiper's Employment with Terracon**

23. Ryan Keiper's employment with Terracon began on or around August 22, 2011. During various portions of his employment with Terracon, Keiper worked on Terracon's gINT software system team and worked to further customize that software to Terracon's specifications.

24. In connection with his work on Terracon's gINT software system team, and to enable him to perform additional customization work on it, Keiper was one of only 12 Terracon employees, out of over 4,000 total employees, that had access to an unlocked version of the software. Providing access to the unlocked version of the software was essential to Keiper's job functions in order for him to be able to perform the necessary revisions to the software.

25. On or around September 21, 2018, Keiper left Terracon to work at Insight.

26. Upon information and belief, Insight has already used, and continues to use, Terracon's customized gINT software in the course of its business without any authorization.

6

27. Upon information and belief, Keiper misappropriated a copy of Terracon's customized gINT software with Christopher's knowledge to bring with him to Insight, as he was the lone employee who left Terracon for Insight with access to an unlocked version of the software.

28. Upon information and belief based on a report that Terracon recently obtained, Insight created a CPT log for an Insight customer in November 2018 using Terracon's customized gINT software. Accordingly, the CPT log Insight produced for that customer with the misappropriated gINT software was nearly identical to the CPT logs produced by Terracon's customized gINT software. (*Compare* Ex. B, Terracon CPT Log, *with* Ex. C, Insight CPT Log.)

29. Christopher, Keiper, and Insight's actions discussed herein have caused Terracon to lose customers. Terracon has not yet been able to determine the number of customers it has lost as a result of their actions.

**FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839 *et seq*.)**

30. Terracon re-alleges and incorporates by reference all allegations of this Complaint as if fully restated herein.

31. Terracon is the lawful and exclusive owner of various trade secrets, including but not limited to customized gINT software, related to its products and services used in interstate or foreign commerce.

32. Terracon took reasonable steps to protect its trade secrets, including (a) limiting access to electronic information through a secure server that requires employee login credential for access; (b) limiting access to information within the employee population on a tiered need-to-know basis; (c) only accessing Terracon's customized gINT software on Terracon computers;

7

and (d) subjecting employees to policies in the Human Resources E-Manual and the Business Conduct and Ethics Policy that specifically cover the use and protection of company assets, including trade secrets, confidential and proprietary information, and electronic data.  (*See* Ex. A.)

33. Defendants have misappropriated and used Terracon's trade secrets, including, but not limited to, Terracon's customized gINT software, without Terracon's permission.

34. Defendants knew or should have known that Terracon's customized gINT software was a trade secret and was Terracon's proprietary information.

35. Terracon has suffered and will continue to suffer substantial economic loss as a direct and proximate result of Defendants' violations of the Defendant Trade Secrets Act alleged herein. Terracon is entitled to an award of actual damages from Defendants, plus exemplary damages of up to two times actual damages, plus attorney's fees and costs.

36. Defendants have been unjustly enriched by profiting from their misappropriation, use, or disclosure of Terracon's confidential and trade secret information. Terracon is entitled to imposition of a constructive trust requiring Defendants to disgorge to Terracon any amounts they have received or benefitted through their violations of the Defend Trade Secrets Act.

37. Terracon is also entitled to injunctive relief, on a preliminary and permanent basis, to prevent any further actual or threatened misappropriation, use, or disclosure of Terracon's trade secrets.

**FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Violation of S.C. Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 *et seq.*)**

38. Terracon re-alleges and incorporates by reference all allegations of this Complaint as if fully restated herein.

39. Terracon is the "owner" of various "trade secrets" as those terms are defined under the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 et seq.

40. Terracon's trade secrets as described herein derive independent economic value from not being known to, or readily ascertainable by, the general public through proper means. Plaintiff has undertaken efforts that are reasonable under the circumstances to maintain the secrecy of such information.

41. During their employment with Terracon, Christopher and Keiper were informed of, and should reasonably have known from the circumstances about, the confidential nature of Terracon's trade secrets and their duty not to disclose such trade secrets without Terracon's express permission.

42. Defendants have misappropriated and used Terracon's trade secrets, including, but not limited to, Terracon's customized gINT software, without Terracon's permission.

43. Defendants' wrongful misappropriation of Terracon's trade secrets was willful, wanton, malicious, or effected by improper means, including breaches of duties owed to Terracon pursuant to various statutes and the common law of South Carolina.

44. Defendants violations of the South Carolina Trade Secrets Act have directly and proximately caused Terracon to suffer actual losses as well as substantial future losses.

45. Terracon is entitled to an award of actual damages from Defendants, plus exemplary damages of up to two times actual damages, as well as attorney's fees and costs.

46. Defendants have been unjustly enriched by their misappropriation of Terracon's trade secret information.  Terracon is entitled to a constructive trust requiring Defendants to disgorge any amounts they have received or benefitted through their violations of the South Carolina Trade Secrets Act.

47. Terracon is also entitled to injunctive relief, on a preliminary and permanent basis, to prevent any further actual or threatened misappropriation, use, or disclosure of Terracon's trade secrets.

### FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Temporary Restraining Order, Preliminary and Permanent Injunction)**

48. Terracon re-alleges and incorporates by reference all allegations of this Complaint as if fully restated herein.

49. Defendants' actions, individually and collectively, set forth above have caused and threaten to cause Terracon irreparable harm for which there is no adequate remedy at law. The above-described trade secret violations by Defendants have caused and threaten to cause further imminent irreparable harm to Terracon, including but not limited to loss of confidential information, loss of property, the loss of customers, the loss of market share, and the loss of business reputation and goodwill.

50. Terracon has no adequate remedy at law, in that monetary damages are incapable of protecting Terracon from Defendants' continuing and future conduct.

51. Unless enjoined by this Court and directed to return and not use all originals and copies of Terracon's confidential information and trade secrets, Terracon will be irreparably harmed by the use or release of their confidential and trade secret information.

52. Terracon is likely to succeed on the merits.

53. In light of Defendants' misappropriation of Terracon's proprietary software, the balance of equities favors Terracon. The potential harm to Defendants in the event this injunction is granted is non-existent as Defendants would only be prevented from profiting from their wrongful conduct.

54. The public interest is served in preventing and rectifying the misappropriation of Terracon's trade secrets. Therefore, the public interest is not disserved by entry of a temporary restraining order (i) barring Defendants from using, retaining, or relying upon Terracon's confidential information and trade secrets and from engaging in acts of unfair competition, and (ii) requiring Defendants and anyone acting on their behalf or in concert with them to return and not use Terracon's confidential information, trade secrets, and property.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Terracon respectfully requests that the Court enter judgment in its favor on each of its causes of action and award the following relief:

a) Enter a Temporary Restraining Order, and then a Preliminary and Permanent Injunction, as outlined above and in Terracon's Motion for Preliminary Injunction to be subsequently filed;

b) Impose a Constructive Trust to be held for the benefit of Terracon on any and all profits made by Defendants attributable, directly or indirectly, to the wrongful actions by Defendants;

c) Award Terracon its actual, consequential, punitive, and exemplary damages on the above claims;

d) Award Terracon statutory damages, including exemplary damages of two times actual damages and attorney's fees and costs; and

e) Award Terracon such other and further relief that the Court may deem just and proper.

s/ Jennifer H. Thiem
Jennifer H. Thiem (Fed. ID No. 9797)
Email:  jennifer.thiem@klgates.com
J. Whitney McGreevy (Fed. ID No. 12878)
Email:  whit.mcgreevy@klgates.com
K&L GATES LLP
134 Meeting Street, Suite 500
Charleston, SC 29401
Phone:  (843) 579-5600
Fax:  (843) 579-5601

ATTORNEYS FOR PLAINTIFF
TERRACON CONSULTANTS, INC.

February 11, 2019
Charleston, South Carolina

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Terracon Consultants, Inc., | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | VERIFICATION |
| Insight Group, LLC, Ryan Keiper, and William Christopher, Jr., | ) ) | |
| | ) | |
| Defendants. | ) | |

Judy Smith, being first duly sworn, deposes and says that: she is the National gINT Program Manager at Terracon Consultants, Inc.; that she has read the foregoing Verified Complaint; and that she believes the facts and allegations of the Verified Complaint to be accurate based on either her own personal knowledge, the inquiry of other employees, or the review of documentation.



_____
Judy Smith
National gINT Manager
Terracon Consultants, Inc.

SWORN and subscribed before me
this 8th day of February, 2019.

_____
Notary Public for State of Tennessee
My commission expires: 12-28-2022